UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY HUGGINS,<br>    Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>    Defendant. | Case No. 17-cv-02566-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 27 |

Plaintiff Jerry Huggins seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment, and remands the case for further proceedings.

## I. BACKGROUND

Plaintiff applied for Title XVI disability benefits on November 29, 2012. (Administrative Record ("AR") 205.)[1] Plaintiff asserted disability beginning January 1, 2002. (AR 434.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 235, 261.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 273.)

The ALJ considered a number of opinions and medical records in rendering a decision. In

---

[1] Plaintiff also applied for Title II benefits, but subsequently withdrew his Title II claims. (AR 22-23.)

January 2013, U. Mini B. Swift stated that Plaintiff had been her patient since December 2010, and that he was seen about every three months. (AR 1616.) Dr. Swift diagnosed congestive heart failure, hypertension, chronic obstructive pulmonary disease ("COPD"), and Hepatitis C. (AR 1616.) She opined that Plaintiff could continuously stand for three hours, continuously sit upright for six to eight hours, and walk six city blocks without stopping, and found limitations with his ability to reach at and below waist level, lift, carry, bend, squat, and kneel. (AR 1617-18.)

On April 4, 2013, Vanina Gunarto, FNP-BC, stated that Plaintiff alleged he could occasionally lift and carry ten pounds. (AR 565.) Nurse Practitioner Gunarto opined Plaintiff could frequently carry less than ten pounds, stand or walk between two and six hours, and sit less than six hours. (AR 565.)

On April 22, 2013, Plaintiff was examined by Eugene McMillan, M.D. (AR 1824.) During the physical examination, Dr. McMillan observed 2+ edema on Plaintiff's left leg and none on the right, and that Plaintiff was able to walk without an ambulatory aid. (AR 1827.) Plaintiff's range of motion, strength, wrist, elbows, shoulders, hips, knees, and ankles were normal. (AR 1827.) Dr. McMillan opined that Plaintiff could occasionally lift and carry 20 pounds, and frequently lift and carry 10 pounds. (AR 1827.) Plaintiff could stand and walk for six hours, but would require breaks approximately every hour. Plaintiff had no limits for sitting, and could engage in activities that require stooping, kneeling, crouching, and crawling for up to a third of the workday. Dr. McMillan also opined that Plaintiff would have to avoid working in environments that are humid or where he would have prolonged exposure to dust and fumes. (AR 1827.)

In May 2013, Shilper Patel, M.D. opined that Plaintiff was limited to less than sedentary work. (AR 1832-33.) It is unclear what Dr. Patel's relationship is to Plaintiff.

On May 29, 2013, Lisa Kalich, Psy.D. examined Plaintiff. Plaintiff admitted to being violent in his relationships, and using cocaine and marijuana. (AR 1840-41.) Dr. Kalich noted that Plaintiff participated in supportive psychotherapy while incarcerated in 2010 and 2011, and that those treatment notes reflected symptoms of depression and anxiety. (AR 1842.) Dr. Kalich observed Plaintiff as having no symptoms of depression or anxiety, but that he appeared guarded, irritable, distrustful, and reluctant to reveal personal information. (AR 1842.) Dr. Kalich

determined that Plaintiff had moderate depression and antisocial personality traits, although he did not meet the full criteria for antisocial personality disorder. (AR 1842-43.) Dr. Kalich opined that Plaintiff had mild impairments in activities of daily living due to his mental health symptoms, primarily because his depression affected his ability to complete tasks. (AR 1843.) Dr. Kalich found that Plaintiff had moderate to marked impairment in social interactions, with little insight into his problems with anger and aggression which would make his workplace relationships unstable. (AR 1843-44.) Plaintiff would also have great difficulty responding to criticism or feedback. (AR 1844.) Dr. Kalich also found mild difficulty concentrating, and opined that if Plaintiff's physical ailments worsened, his mental health symptoms would become more pronounced. (AR 1844.)

Starting in March 2015, Plaintiff began receiving psychological treatment from Ted AAmes, Ph.D. (AR 2104.) During their sessions, Dr. AAmes observed Plaintiff as being fatigued, guarded, depressed, sad, anxious, numb, and physical discomfort, and having blunted emotions, difficulties maintaining focus, and self-blame. (AR 2104, 2119, 2123, 2125, 2127, 2129, 2133, 2140, 2141.) In July 2015, Plaintiff appeared more rested following two hernia surgeries and at times stated he had better sleep, but still continued to have sleep problems. (AR 2136, 2137, 2140, 2141.)

On September 25, 2015, Dr. AAmes completed a mental impairment questionnaire, diagnosing post-traumatic stress disorder ("PTSD") and personality disorder, and described clinical findings of persistent/fluctuating depressed mood, anger and irritability with a pattern of interpersonal conflict, hypervigilance, detachment and isolative behavior, suspiciousness, recurrent nightmares, sleep disturbance, somatic complaints, and anxiety. (AR 2099.) Dr. AAmes opined that Plaintiff's symptoms would require him to be absent from work more than four days a week, and would have extreme limitations in his ability to maintain regular attendance, complete a normal workday and workweek, accept instructions and respond appropriately to criticism from supervisors, deal with the stress of semiskilled or skilled work, and maintain socially appropriate behavior. (AR 2101-02.) Plaintiff would also have marked limitations in his ability to maintain attention for two-hour segments, sustain an ordinary routine without special supervision, work in

3

coordination with or proximity to others without being unduly distracted, ask simple questions or requests, respond appropriately to changes in a routine work setting, deal with normal stress, understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public. (AR 2101-02.)

A hearing was held on June 9, 2015, which was continued to give Plaintiff time to obtain representation. (AR 92-96.) A second hearing was held on September 29, 2015, during which Plaintiff testified that he slept all the time, and would get angry and act out. (AR 83.) Plaintiff also testified he could sometimes do his own grocery shopping. (AR 84.) The ALJ asked Plaintiff if he had gotten mental health treatment while incarcerated. (AR 87.) Plaintiff replied his treatment had been "all for physical," but further stated that he saw psych a few times. (AR 88.) Plaintiff's attorney noted that Plaintiff received counseling in prison. (AR 88.) The ALJ stated that he did not see any treatment records from Plaintiff's incarceration, and continued the hearing. (AR 88-89.)

A third hearing was held on December 8, 2015. (AR 22.) There, the ALJ asked if the record was complete, to which Plaintiff's attorney replied, "I hope so." (AR 23.) The ALJ asked if as far as counsel knew, all relevant records had been submitted after exercising due diligence. (AR 24.) Plaintiff's attorney responded, "Well, probably not due diligence, but some diligence." (AR 24.)

At the hearing, Dr. Bruce Biller diagnosed dilated cardiomyopathy, congestive heart failure, cocaine use and abuse, hypertension, Hepatitis C, depression, and anti-social personality. (AR 26.) Dr. Biller noted that a big issue was whether non-compliance with medication and recommendations, as well as cocaine use, caused episodes of acute congestive heart failure. (AR 28-29, 38.) Plaintiff also testified, stating that he had seen Dr. AAmes two weeks prior. (AR 54.)

Following the hearings, the ALJ rejected Plaintiff's application on January 12, 2016. (AR 205-219.) A request for review of the ALJ's decision was filed with the Appeals Council on March 13, 2016. (AR 18.) During the review by the Appeals Council, additional medical records were submitted, including from Santa Rita Jail dating from February 3, 2010 through December 28, 2015, Alta Bates Summit Medical center from September 30, 2013 through January 1, 2015,

4

and Dr. AAmes from October 2, 2015 through December 16, 2015, as well as a mental impairment questionnaire completed by Dr. AAmes on May 12, 2016. (AR 5-6.) The Appeals Council denied Plaintiff's request for review on March 7, 2017. (AR 1.)

On May 4, 2017, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) On April 25, 2018, Plaintiff filed his motion for summary judgment. (Plf.'s Mot., Dkt. No. 20.) On August 6, 2018, Defendant filed her opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 27.) On September 19, 2018, Plaintiff filed his reply. (Plf.'s Reply, Dkt. No. 31.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404,

5

Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On January 12, 2016, the ALJ issued an unfavorable decision. (AR 205-19.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 29, 2012, the protected application date. (AR 207.)

At step two, the ALJ identified the following severe impairments: congestive heart failure secondary to dilated cardiomyopathy likely caused by cocaine abuse, hypertension, a depressive disorder, an anxiety disorder, antisocial personality traits, and a polysubstance use disorder (in remission). (AR 207.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that med or medically equaled a listed impairment. (AR 208-09.)

At step four, the ALJ determined that Plaintiff had the RFC to perform light work, including lifting and carrying ten pounds frequently and twenty pounds occasionally, and sitting, standing, or walking for six hours each in an eight-hour workday. (AR 210.) Plaintiff could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally, and could not climb ladders, ropes, or scaffolds. Plaintiff was also limited to simple repetitive work with no public

interaction. (AR 210.)

With respect to Plaintiff's testimony, the ALJ found that Plaintiff's impairments "reasonably could be expected to cause some alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (AR 211.) First, the ALJ looked at the medical evidence. In summarizing the evidence, the ALJ noted that following a hernia surgery in July 2015, Plaintiff reported good recovery to his psychologist. (AR 212.) The ALJ also observed that there was "very little evidence from 2014," during which Plaintiff was incarcerated for part of that time, "so his medical condition during most of that year is unknown but may be presumed to be stable because he apparently needed no other treatment." (AR 212.) The ALJ further stated that Plaintiff testified that he last used cocaine in January 2015, and that "[t]he lack of emergency treatment or cardiac exacerbations is consistent with abstention from cocaine and demonstrates that when he does not abuse cocaine, his medical condition improves and requires only routine care, including adherence to his medication regimen." (AR 212.)

As to the medical opinions, the ALJ gave Dr. Swift's opinion less weight because it was not well supported by treatment notes. (AR 213.) For example, Dr. Swift opined that Plaintiff would have problems with bending, squatting, and kneeling due to knee problems, but there was no medical evidence indicating any knee problems. The ALJ also found that Dr. Swift's opinion did not appear to be based on a comprehensive physical examination and was not consistent with the longitudinal record, and that it was unclear if Dr. Swift had personally examined or treated Plaintiff. The ALJ also stated that there was no evidence Dr. Swift was aware of Plaintiff's cocaine abuse, which might have altered her conclusions. (AR 213.)

Next, the ALJ gave Dr. McMillan's opinion some weight. (AR 213.) The ALJ found that Dr. McMillan was apparently unaware of the extent of Plaintiff's cocaine abuse, and his opinion might have differed if he had known. The ALJ also explained that there was no explanation for the need for a break after each hour of standing, and specifically did not adopt that limitation. (AR 213.)

The ALJ gave Dr. Patel's opinion no weight because there was no evidence Dr. Patel had

7

examined or treated Plaintiff at the time of his opinion. (AR 213.)

The ALJ gave Nurse Practitioner Gunarto's opinion little to no weight because her conclusions were more extreme than warranted by the record. (AR 214.) The ALJ also raised concerns that her opinion was based on Plaintiff's subjective statements. (AR 214.)

The ALJ stated that the state agency consultants concluded that Plaintiff should be limited to a range of sedentary to light work, and that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally based primarily on the congestive heart failure. (AR 214.) The ALJ gave these opinions some weight because the consultants did not have all of the medical records to review or Dr. Biller's testimony.

The ALJ found that Dr. Biller's testimony "help[ed] illuminate the issues in the complex and lengthy medical record," although Dr. Biller did not express an opinion about Plaintiff's functional ability. (AR 214.)

The ALJ gave great weight to Dr. Kalich's opinion, finding it to be "well reasoned and thorough." (AR 216.)

The ALJ gave little weight to Dr. AAmes's opinion. (AR 217.) First, the ALJ found that Dr. AAmes's conclusions were inconsistent with the treatment notes, which indicated improvement after the hernia surgery when Plaintiff's pain was relieved and he was able to get better sleep. (AR 217.) Second, the ALJ concluded that Dr. AAmes had relied exclusively on Plaintiff's subjective reports and limitations. Third, the ALJ found there was no evidence for such extreme limitations because the severity of the symptoms persisted for far less than twelve months, and there was no reason to believe that Plaintiff's symptoms would not improve substantially with his improving physical condition and abstention from substance abuse. (AR 217.)

The ALJ then found that Plaintiff's credibility was undermined by his criminal history and substance abuse history. (AR 217.) He also noted that both Dr. Kalich and Dr. McMillan concluded that Plaintiff was capable of a range of work. (AR 217.) Further, there was evidence that Plaintiff had lied about a physical condition to receive a benefit in prison, and that he had also embellished his social security application by originally alleging an onset date in 2002. (AR 217.)

8

The ALJ also found that Plaintiff failed to comply with his prescriptions and abused cocaine, likely causing the heart failure exacerbations. (AR 217-18.) Moreover, Plaintiff was capable of obtaining his own meals, shopping, caring for basic hygiene, and taking public transportation, which was evidence of fairly normal activity. (AR 218.) The ALJ also explained that when incarcerated in 2014 and presumably not using drugs, Plaintiff required no medical treatment other than his prescriptions, and there was no evidence he was unable to endure the activity levels required while in jail. (AR 218.) Thus, the ALJ concluded "that the routine medical treatment for his symptoms, when he was compliant and not using drugs, the opinions of Drs. Kalich and McMillan, and the opinions of the State agency reviewers constitute persuasive reasons for rejecting [Plaintiff's] allegations and testimony of more severe symptoms." (AR 218.)

At step five, the ALJ found that Plaintiff had no past relevant work. (AR 218.) The ALJ concluded that based on Plaintiff's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, there were approximately 1,600 separate sedentary and light unskilled occupations available to Plaintiff, with each occupation representing numerous jobs in the national economy. (AR 219.) Accordingly, the ALJ concluded that Plaintiff was not disabled.

## IV. DISCUSSION

In his motion for summary judgment, Plaintiff argues that the ALJ erred because: (1) the ALJ failed to fully and adequately develop the record, (2) the ALJ improperly omitted PTSD and COPD as severe impairments at Step Two, (3) the ALJ improperly rejected medical opinions, (4) the ALJ incorrectly evaluated Plaintiff's credibility, and (5) the ALJ erroneously failed to obtain vocational expert testimony.[2]

### A. Development of the Record

Plaintiff asserts that the ALJ erred by failing to obtain: (1) Plaintiff's medical records from his 2014 incarceration, (2) updated records from Alta Bates Summit Medical Center, (3) mental health records from Plaintiff's prior incarcerations, and (4) updated records from Dr. AAmes.

---

[2] Plaintiff also argues that the ALJ's RFC finding did not accurately reflect Plaintiff's limitation; this argument, however, is dependent on the other alleged errors identified by Plaintiff. (*See* Plf.'s Mot. at 23-24.)

9

(Plf.'s Mot. at 9.) In general, the ALJ has an independent duty to fully and fairly develop the record in social security cases. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* "The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests." *Id.*

The Court finds that the ALJ failed to develop the record. Specifically, the ALJ was aware at the hearing that Plaintiff's counsel had not exercised due diligence in ensuring that the record was complete. (AR 24.) Moreover, the ALJ was aware that the record was missing mental health records from Plaintiff's prior incarcerations, that Plaintiff was still seeing Dr. AAmes, and that Plaintiff had been hospitalized but that the records were not in evidence. (*See* AR 54, 87-88, 212.) While the ALJ did not specifically find that the evidence was ambiguous or insufficient to render a decision, he acknowledged the lack of records repeatedly in his opinion. (*See* AR 212, 216, 218; *see also Tonapetyan*, 242 F.3d at 1150 (finding that the ALJ failed to develop the record even where the ALJ "did not specifically find that the evidence of [the claimant's] mental impairment was ambiguous, or that he lacked sufficient evidence to render a decision").)

Moreover, the failure to develop the record was not harmless because the ALJ relied on the lack of evidence in coming to his conclusions. For example, the ALJ found there was no evidence that Plaintiff had any medical problems while he was incarcerated in 2014, before making the "reasonable inference that he was taking his medications . . . and refrained from drug abuse while in jail," and that "his condition was relatively stable." (AR 215.) Records from Plaintiff's 2014 incarceration, however, show that Plaintiff was hospitalized for congestive heart failure, during which "a lot of fluid" was drained from Plaintiff. (AR 2414.) This contradicts the ALJ's finding that Plaintiff had no medical problems and was relatively stable. (AR 215.)

Likewise, the ALJ noted that there was "no evidence of treatment for any psychological problem until March 2015," but mental health records from Plaintiff's incarcerations show that he received treatment for depression and PTSD two years prior to March 10, 2014. (AR 2463.) Those records also indicated psychiatric treatments in 2013. (AR 2465.) Records from 2010 and

10

2011 also appear to show treatment, including various progress notes with a psychiatric social worker from February 2010 and June 2010, and a referral to Plaintiff's former therapist in July 2011. (AR 2469, 2476, 2480.)

Additionally, in rejecting Dr. AAmes's opinion, the ALJ relied in part on Plaintiff's improvement, namely that Plaintiff was able to get better sleep. (AR 217.) In so concluding, the ALJ reviewed Dr. AAmes's notes through September 2015. Treatment notes between September 2015 and the December 2015 hearing, however, continued to document night terrors and fatigue. (AR 2708, 2717.)

The Court therefore concludes that the ALJ erred in not developing the record, requiring remand for further proceedings.

### B. Step Two Impairments

Second, Plaintiff argues that the ALJ erred at Step Two by failing to include PTSD and COPD as severe impairments. (Plf.'s Mot. at 11-13.) An impairment is "severe" if it significantly limits a claimant's ability to perform basic work activities for a consecutive twelve-month period. *Smolen*, 80 F.3d at 1290.

With respect to Plaintiff's PTSD, the Court finds no reversible error. Even assuming Plaintiff's PTSD should have been listed at Step Two, any error was harmless because Plaintiff fails to explain how symptoms of his PTSD differ from the symptoms of the depressive disorder, anxiety disorder, and antisocial personality traits that the ALJ found severe. (*See* AR 207.) On reply, Plaintiff argues that Plaintiff's PTSD causes angry outbursts, hypervigilance, and suspiciousness that cause significant difficulty interacting with others. (Plf.'s Reply at 5.) The ALJ, however, specifically considered Plaintiff's limitations in interacting with others, as he found that Plaintiff could not interact with the public. In so finding, the ALJ gave great weight to Dr. Kalich's opinion, which did not diagnose PTSD but found antisocial personality traits. (AR 215.) Additionally, Dr. Kalich concluded Plaintiff would have moderate difficulties with social interactions, evidenced by his guarded and distrustful interactions with Dr. Kalich, his violent history, and his lack of insight of these problems. Thus, Plaintiff fails to show why not listing Plaintiff's PTSD at Step Two would be prejudicial when Plaintiff's difficulties interacting with

11

others was already considered.

As to Plaintiff's COPD, the Court finds that the failure to develop the record affects any determination of whether the COPD was severe. The ALJ found that the medical evidence indicated mild COPD symptoms, pointing, in part, to the lack of evidence from 2014 which the ALJ "presumed to be stable because [Plaintiff] apparently needed no emergency or other treatment." (AR 212.) Alta Bates medical records which were not in the record before the ALJ, however, indicate treatment for breathing problems, possibly exacerbated by Plaintiff's COPD. (*E.g.*, AR 2576 (July 2014 hospital visit for breathing problems, noting COPD exacerbation).) Further, while Defendant argues that impairments caused by COPD were already considered by the ALJ, it is not clear the ALJ considered the breathing problems as part of the other identified severe impairments. Accordingly, the Court finds that on remand, the ALJ should consider whether Plaintiff's COPD was a severe impairment in light of the full record.

### C. Medical Opinion Evidence

Third, Plaintiff challenges the ALJ's evaluation of the opinions of Dr. AAmes, Dr. Kalich, Dr. McMillan, Dr. Swift, Nurse Practitioner Gunarto, Dr. Patel, and the state agency doctors. (Plf.'s Mot. at 14-19.)

The court "distinguish[es] among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991)). If a treating physician's medical opinion is contradicted by another doctor, the ALJ must identify specific legitimate reasons supported by substantial evidence. *Id.*

#### i. Dr. AAmes

Plaintiff challenges each of the reasons the ALJ gave for giving Dr. AAmes's opinion little

weight. First, the ALJ found that Dr. AAmes's conclusions were inconsistent with the treatment notes because the treatment notes indicated improvement after the hernia surgery, specifically with Plaintiff's sleep. (AR 217.) As discussed above, the ALJ's finding may be affected by considering Dr. AAmes's later treatment notes not in the record before the ALJ, as Dr. AAmes found that Plaintiff was still suffering night terrors. (AR 2708.) Moreover, the error is not harmless. The Ninth Circuit has cautioned that particularly in the context of mental health issues, it is error to reject testimony "merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Thus, the later treatment notes may affect whether the ALJ could discount Dr. AAmes's opinion based on Plaintiff's improvements.

Second, the ALJ concluded that Dr. AAmes "apparently relied exclusively on the subjective report of symptoms and limitations provided by the claimant, and seemed uncritically to accept as true most, if not all, of what the claimant reported." (AR 217.) The Court finds this is not a specific, legitimate reason for ejecting Dr. AAmes's opinion. Dr. AAmes's treatment notes contained observations including Plaintiff's difficulty walking, fatigue, sadness, anxiety, blunted emotions, difficulty with focus, apprehension, freezing up when asked about his past trauma, embarrassment, and physical discomfort. (AR 2119, 2123, 2125, 2127, 2129, 2133.) Dr. AAmes also conducted screenings, after which he diagnosed PTSD and impacts on functioning. (*See* AR 2127.) In short, Dr. AAmes's opinions were not based solely on Plaintiff's subjective reports but his own observations of Plaintiff's behavior. Indeed, the Ninth Circuit has acknowledged that "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Finally, the ALJ concluded there was no evidence that the extreme limitations identified by Dr. AAmes persisted from the onset date to September 2015, indicating that the severity persisted

13

for less than 12 months. (AR 217.) The ALJ also noted that the claimant's improved physical condition and possible abstention from substance abuse could cause his symptoms to further improve. As discussed above, the additional medical records, not before the ALJ, could affect such a finding. Accordingly, the Court finds that remand for further proceedings is appropriate as to the weight given to Dr. AAmes's opinion.

### ii. Dr. Kalich

Plaintiff challenges the ALJ's failure to include limitations from Dr. Kalich, despite giving her opinion great weight. (Plf.'s Mot. at 17.) Specifically, Dr. Kalich found Plaintiff would have moderate to marked impairment in social interactions, which would likely give him "great difficulty appropriately responding to criticism or feedback from others in a work environment." (AR 1843-44.) The ALJ, however, only found that Plaintiff should be limited to no public interaction, but did not address her opinion as to her ability to work with others. (*See* AR 215-16.)

While Defendant responds that an ALJ is not required to adopt every limitation assessed by a physician in the RFC, here, the ALJ essentially rejected Dr. Kalich's opinion regarding Plaintiff's ability to work with others without explanation. (*See* Def.'s Opp'n at 12.) The ALJ cannot give great weight to Dr. Kalich's opinion and then disregard her opinion regarding Plaintiff's ability to work with others. *See Tonapetyan*, 242 F.3d at 1150-51 (where the ALJ heavily relied on the doctor's testimony, "the ALJ was not free to ignore [the doctor's] equivocations and his concern over the lack of a complete record . . . . Moreover, he was not free to ignore [the doctor's] specific recommendation that a more detailed report . . . be obtained"); *Shafer v. Barnhart*, 120 Fed. Appx. 688, 693 (9th Cir. 2005) (holding that the ALJ "is not free to assign controlling weight to Dr. Harris' opinion regarding Claimant's residual functional capacity and yet disregard without explanation that portion of Dr. Harris' opinion regarding anxiety induced hyperventilation syndrome resulting in fatigue"). The Court finds that remand for further proceedings on this issue is warranted.

### iii. Dr. McMillan

Plaintiff also challenges the ALJ's consideration of Dr. McMillan's findings that Plaintiff needed a break after each hour of standing, and that Plaintiff should avoid work environments with

humidity or prolonged exposure to dust and fumes. (Plf.'s Mot. at 18.)

The Court finds no error as to the ALJ's rejection of Plaintiff's need for a break after each hour of standing. The ALJ found that there was no explanation for this specific need, after noting that Dr. McMillan had observed 2+ edema on Plaintiff's left leg but that his gait was normal and there were otherwise "normal clinical signs, including no indication of knee problems, no evidence of wheezing, regular cardiac rhythm, normal reflexes, and normal sensory findings." (AR 213.) Plaintiff argues that there was swelling, but swelling alone does not necessarily require hourly breaks, particularly when Plaintiff's gait was normal and the clinical signs were otherwise normal. Plaintiff cites no authority or evidence that swelling or edema would require hourly breaks.

The Court, however, finds error as to the ALJ's consideration of Dr. McMillan's finding regarding humidity and dust and fumes. The ALJ provided no apparent explanation for not considering this finding, other than that the ALJ giving "some weight" to Dr. McMillan's finding generally because he may not have been unaware of the extent of Plaintiff's cocaine abuse. (AR 213.) It is unclear how the extent of Plaintiff's cocaine abuse may have affected Plaintiff's ability to work in certain environments, and neither the ALJ nor Defendant offers any explanation. The Court finds error as to this issue, and remands for further proceedings on this issue.

### iv. Dr. Swift

Plaintiff also challenges the ALJ's rejection of Dr. Swift's opinion. (Plf.'s Mot. at 18-19.) The ALJ rejected Dr. Swift's opinion because the records did not show that he was examined or personally treated by Dr. Swift, that her opinion was not well supported by treatment notes, and did not appear to be based on a comprehensive physical examination. (AR 213.) The ALJ also noted that Dr. Swift may not have been aware of Plaintiff's continued cocaine abuse. (AR 213.)

The Court finds no error. Specifically, the ALJ found that Dr. Swift's opinion was not supported by her treatment notes, using as an example the lack of any knee problems despite finding that Plaintiff would have problems with bending, squatting, and kneeling due to knee problems. (AR 213.) A finding of such limitations with no support in the record could limit the weight given to Dr. Swift's opinion as a whole. *See Rollins v. Massnari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding adequate reasons for the ALJ's rejection of a doctor's opinion where the

doctor's recommendations "were not supported by any finding made by any doctor, including Dr. Young").

####            v.     Nurse Practitioner Gunarto, Dr. Patel, State Agency Medical Consultants

Finally, Plaintiff generally contends the ALJ erred in rejecting the opinions of other medical sources who opined that Plaintiff was limited to sedentary or less than sedentary work. (Plf.'s Mot. at 19.) Plaintiff provides almost no explanation for how he asserts the ALJ erred, only stating that "[t]he ALJ erroneously rejected each of these opinions without adequate reasons supported by substantial evidence in favor of his own RFC that is less restrictive than any treating, examining, or nonexamining medical source opinion in the record." (*Id.*) The Court finds the ALJ did not err, as he explained why he adequately explained why he rejected each opinion.

First, the ALJ gave little to no weight to Nurse Practitioner Gunarto's opinion because her opinion appeared to be based solely on Plaintiff's subjective statements. (AR 214.) Plaintiff does not challenge this finding, nor does he cite to any evidence in the record that supports her opinion.

Second, the ALJ rejected Dr. Patel's opinion because there was no evidence that Dr. Patel had examined Plaintiff or was treating him at the time of his opinion. (AR 213.) Again, Plaintiff provides no explanation for why this is not a specific or legitimate reason for rejecting the opinion.

Third, the ALJ gave some weight to the state agency consultants. (AR 214.) While it appears the ALJ erred in stating that the state agency consultants concluded that Plaintiff should be limited to a range of sedentary to light work because they in fact found that Plaintiff should be limited to sedentary work, the Court finds no reversible error as the ALJ ultimately gave these opinions only some weight on the ground that the consultants did not have all of the medical records to review or the benefit of Dr. Biller's testimony. (AR 214; *see also* AR 165 (finding maximum sustained work capability of sedentary work).) Notably, Plaintiff does not explain how this misstatement of the state agency consultants' conclusions affect the ALJ's RFC or disability finding, particularly when the ALJ ultimately identified both light and sedentary level jobs available to Plaintiff. (AR 219; *see also* Def.'s Opp'n at 15.)

### D.    Plaintiff's Credibility

Fourth, Plaintiff argues that the ALJ erred by not providing clear and convincing reasons in

16

rejecting Plaintiff's allegations and testimony of more severe symptoms. (Plf.'s Mot. at 20-23.) In evaluating a claimant's testimony regarding subjective pain or other symptoms, an ALJ must engage in a two-step inquiry. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). An ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted). At this step, a claimant need not show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted). Next, if a claimant meets this first prong and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the severity of her symptoms. *Id.*

The Court finds that the ALJ erred by not specifically identifying which of Plaintiff's statements he found not credible and why. The Ninth Circuit has found error where an ALJ concluded that a claimant's functional limitations were less serious than alleged "based on unspecified claimant testimony and a summary of medical evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Specifically, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' [the court] must have in order to review the ALJ's decision meaningfully, so that [the court] may ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494.

Here, the ALJ gave reasons generally for why he found Plaintiff's statements concerning his "more severe symptoms" to be less credible, but did not identify which of Plaintiff's statements specifically was inconsistent with which medical findings or opinions. Instead, the ALJ appeared to be discounting Plaintiff's general claim of disability, stating that "[i]n alleging disability, the claimant essentially asserted that he could perform no substantial gainful activity on a sustained basis as a result of his symptoms." (AR 218.) The ALJ did not identify any of the symptoms that he found non-credible, or more "severe" than the RFC he determined. While Defendant argues

17

that the ALJ identified several reasons why he did not believe Plaintiff to be so limited, this is a separate issue from the ALJ's failure to identify which specific testimony he was rejecting. *Contrast with Neona M. v. Comm'r of Soc. Sec.*, Case No. 18-5468-BAT, 2019 U.S. Dist. LEXIS 33977, at *4 (W.D. Wash. Mar. 4, 2019) (distinguishing *Brown-Hunter* where the ALJ explained how the medical record contradicted Plaintiff's alleged disability onset date, complaints of functional limitations caused by her neuropathy and spine disorder, and claimed need for a cane/walker); *Todd B. v. Berryhill*, Case No. 17-cv-1337-SB, 2018 U.S. Dist. LEXIS 106295, at *19-20 (D. Ore. June 26, 2018) (distinguishing *Brown-Hunter* where the ALJ explained that Plaintiff's testimony regarding his inability to move due to the pain from pancreatitis flare-ups was not credible because hospital records of a flare-up showed noted normal and benign findings). This failure to identify specific testimony and explain the inconsistencies constitutes error that prevents the Court from "discern[ing] the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why [he] found [Plaintiff's] testimony to be not credible. . . . [P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony is not credible." *Brown-Hunter*, 806 F.3d at 494.

Plaintiff also argues that other reasons given by the ALJ for finding Plaintiff not credible are not relevant. (Plf.'s Mot. at 22.) For example, the ALJ pointed to Plaintiff's apparent lying about having a seizure disorder to be assigned a lower bunk, as well as embellishing his social security claim by originally alleging an onset date in 2002. (AR 217.) Plaintiff contends such reasons should not be considered; the Court disagrees. Exaggerated statements about symptoms go to a claimant's credibility. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010) (finding the ALJ could reject the plaintiff's claims regarding mental symptoms where the ALJ had found that the plaintiff "was not entirely credible because he had made exaggerated statements about the intensity and persistence of his physical impairments"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying . . . and other testimony by the claimant that appears less than

18

candid") (internal quotation omitted).

Accordingly, the Court finds that the ALJ erred because he did not identify the specific portions of Plaintiff's testimony that he found not credible. The ALJ, however, did not err in relying, in part, on Plaintiff's apparent lying to find Plaintiff not credible.

### E. Medical-Vocational Guidelines (Grids)

Finally, Plaintiff argues that the ALJ erred by relying on the Medical-Vocational Guidelines rather than obtaining vocational expert testimony. (Plf.'s Mot. at 24.) "The ALJ can use the grids without vocational expert testimony when a non-exertional limitation is alleged because the grids provide for the evaluation of claimants asserting both exertional and non-exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (internal quotation omitted). The grids, however, "are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations." *Id.* (internal quotation omitted).

Plaintiff argues that the ALJ's RFC contained a significant non-exertional limitation not contemplated by the Grids, namely his inability to interact with the public. (Plf.'s Reply at 10.) The Ninth Circuit, however, has upheld the use of the Grids even when the claimant was to have no public interaction. *See Garcia v. Comm'r of Soc. Sec.*, 587 Fed. Appx. 367, 370 (9th Cir. 2014) (upholding use of Grids where the ALJ's RFC found that the plaintiff was to have limited or no public contact); *Angulo v. Colvin*, 577 Fed. Appx. 686, 687 (9th Cir. 2014) ("The use of the grids was appropriate. . . . [The claimant's] postural and environmental limitations did not significantly limit his ability to do unskilled light of sedentary work. Nor did his restriction to nonpublic, simple, repetitive work."). Thus, the Court finds no error in the ALJ's use of the Grids.

///
///
///
///
///
///

## V. CONCLUSION

For the reasons stated above, the Court REMANDS the case for further proceedings, consistent with this opinion.

IT IS SO ORDERED.

Dated: March 28, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge